## UNITED STATES v. BARNHART.

### (Circuit Court, D. Oregon. August 24, 1883.)

1. BOND OF INDIAN AGENT—CONDITION OF.

   B. was appointed agent for the Indians in Washington territory, and as such gave a bond conditioned to faithfully account for all money and property that might come into his hands, and was thereupon assigned to duty on the Umatilla reservation, in Oregon, where he acted as agent to the Indians settled thereon, under the treaty of June 9, 1855, (12 St. 945,) some of whom had previously resided in Washington territory. *Held*, (1) the condition of the bond did not include or apply to money or property not received by the obligor as agent of the Indians in Washington territory; and (2) that he was not liable on said bond for money received by him while he was acting as agent to the Indians on the Umatilla reservation.

2. MOTION IN ARREST OF JUDGMENT.

   In the consideration of a motion in arrest of judgment the court cannot look beyond the record, and therefore will not take notice of a stipulation made during the trial, admitting the existence of certain facts in the case.

3. MOTION FOR NEW TRIAL.

   A motion for a new trial, on the ground that the verdict is contrary to evidence, will not be allowed where the amount in controversy is trifling; but when the verdict is probably the result of an erroneous ruling or direction of the judge, the motion will be allowed, however small the amount.

At Law. Action on official bond.

*James F. Watson*, for the United States.

*Seneca Smith*, for defendant.

DEADY, J. This action was commenced on July 26, 1881, to recover from the defendant the sum of $115.75 for money received by him as Indian agent between November 19, 1861, and September 30, 1865, and not duly accounted for. It appears from the complaint that the defendant was appointed "agent for the Indians in Washington territory," and as such gave a bond, with sureties, in the penal sum of $10,000, conditioned as follows: "Now, if the said Barnhart shall and doth at all times henceforth, and during his holding and remaining in said office, carefully discharge the duties thereof, and faithfully expend all public moneys and honestly account for the same, and for all public property which shall or may come into his hands without fraud or delay, then the above obligation to be void, otherwise to remain in full force and virtue;" and that, as such agent, he received from the plaintiff, under said bond, between the dates aforesaid, a large sum of money, of which he failed to account for $115.75, according to the condition thereof. The action is brought upon this bond against the defendant alone for this sum, with interest since September 30, 1865. The answer of the defendant is in effect a denial that he ever received any money from the plaintiff as "agent for the Indians in Washington territory" under said bond, or failed to account for the same. The cause was tried with a jury, who, on December 13, 1882, gave a verdict for the plaintiff for the sum of $10.75. The defendant moved in arrest of judgment, and for a new

trial, which motions were argued and submitted on August 17, 1883.

On the trial the plaintiff offered in evidence a stipulation by which the defendant admitted that the money in question was received by him while on the Umatilla reservation, and while acting as agent thereof, and not otherwise; and also the treasury statement of differences, as to money furnished and received by him while so acting thereon, to which the defendant objected as immaterial and irrelevant, because it appeared therefrom that said money was not received by him as "agent for the Indians in Washington territory," nor under his bond as such agent. The court overruled the objection *pro forma*, and admitted the evidence. This bond was taken under section 7 of the act of July 31, 1854, (10 St. 333,) by which the agents for the Indian tribes in the territory of Washington were required to give bond "in such penalties, and with such conditions and such security, as the president or secretary of the interior may require."

Whatever may be the general liability of the defendant to the United States for this money, as for money had and received by him to its use, he is not liable therefor on this bond, as the maker thereof, to account for any money or property not received by him as "agent for the Indians in Washington territory." It is true, he was required to give bond with such "conditions" as the president or secretary of the interior might require. And the bond actually given does contain the condition that the defendant will account for all public money and property that may come into his hands. But this general language must be construed with reference to the subject-matter,—the purpose and object of the bond,—which was to secure the faithful performance of the obligor's duty as "agent for the Indians in Washington territory," and nothing more. Nor will the power given to the president and secretary to require a bond from an agent with "conditions," be construed to authorize them to exact or impose conditions not relative to the duties and obligations of the office; as, for instance, that the agent would not be interested in the trade or business beyond the limits of the reservation.

Admitting this conclusion, counsel for the United States contends that the defendant, while acting as agent on the Umatilla reservation, was acting as agent for the Indians in Washington territory, within the obligation of his bond. The statutes applicable to the subject, and then in force, are the following:

By section 4 of the act of June 5, 1850, (9 St. 437; section 2052, Rev. St.,) the president was authorized "to appoint one or more Indian agents, not exceeding three," each of whom should perform the duties of agent to such tribe of Indians in Oregon as the superintendent might direct. By the act of March 2, 1853, (10 St. 172,) the territory of Washington was organized out of the northern part of Oregon; and by the act of July 31, 1854, (10 St. 332; section 2052, Rev. St.,) the president was authorized to appoint "such number of Indian

agents, not exceeding three, as he may deem expedient for the Indians in the territory of Washington."

By the treaty of June 9, 1855, (12 St. 945,) which was ratified by the senate on March 8, 1859, the Walla Walla, Cayuse, and Umatilla tribes and bands of Indians then occupying lands partly in Washington and partly in Oregon territory, ceded the country claimed by them collectively to the United States, with a reservation of a certain portion thereof on the Umatilla river, in Oregon, and since known as the Umatilla reservation, which was by the treaty set apart for the exclusive use of such Indians, who thereby agreed to remove to and settle upon the same within one year after the ratification of the treaty.

It is understood that these Indian tribes had removed to this reservation, and an agency had been established thereon, before the appointment of the defendant as agent. Some of them, as the Walla Wallas and a portion of the Cayuses, had lived in Washington territory before that time, but thereafter they lived upon the reservation established for them in Oregon, and were in fact no longer "Indians in Washington territory." And if the defendant could be considered as having received any portion of this money, while acting as agent at the Umatilla reservation, as agent of the Indians in Washington territory, because some of the Indians then settled on said reservation once lived in said territory, before he could be held liable on his bond for not accounting for the same, it would be necessary to show what portion of it was so received, of which there is no evidence.

The defendant was appointed and gave bond as agent for the Indians in Washington territory, but for some reason was assigned to duty upon a reservation in Oregon. The irregularity probably arose in this way: Including the Umatilla reservation, there were then four reservations in Oregon—the other three being the Warm Springs, the Siletz, and the Grand Round. But the law of 1850 only permitted the appointment of three agents for the Indians in Oregon; and instead of asking congress to increase the number, the department seems to have managed to get around the difficulty by appointing a fourth one as agent for the Indians in Washington, where I believe there were then only two, and assigning him to duty in Oregon, at a reservation where a portion of the Indians had once lived in Washington.

But as I read the statute of 1854, authorizing the appointment of not exceeding three agents for the Indians *in* Washington, such agent, when appointed, is a local officer, as much as the marshal and district attorney of the territory, and cannot be required or authorized to act as agent for Indians not settled or resident therein.

But the motion in arrest of judgment must be denied. Upon this motion the court cannot look beyond the record. *Carter* v. *Bennett,* 15 How. 356. Upon the face of this record—the pleadings—it does

not appear that this money was received by the plaintiff while acting as agent of the Indians in Oregon. The admission made to that effect on the trial is no part of the record. The complaint alleges that the defendant received the money while acting as "agent for the Indians in Washington," and the answer denies it. The verdict is for the plaintiff, and there is nothing on the record to prevent a verdict being given accordingly.

The motion for a new trial is allowed. Notwithstanding the small amount of the verdict, the case does not come within the rule, *de minimis non curat lex.* This maxim seems to be confined to cases when the matter in controversy is trifling, and the motion is made on the ground that the verdict is against the evidence. *Macrow* v. *Hull,* 1 Burr. 11; *Burton* v. *Thompson,* 2 Burr. 664. But where the verdict is probably the result of an erroneous ruling or direction of the judge, a new trial will be granted, however small the amount in question. Broom, Leg. Max. 142, and cases there cited. Now, but for the ruling of the court, admitting the plaintiff's proof of deficiency, as contained in the "statement of differences" from the treasury department, after the admission that the money was received by the defendant while acting as agent at the Umatilla reservation, in Oregon, the verdict must have been for the defendant. I stated at the time that the objection was probably well taken, but it was better for all concerned that the opinion of the jury be had upon the facts first, and then, if necessary, the defendant could raise the question again on a motion for a new trial.

The motion for a new trial is allowed, with the costs, to abide the event of the action.